UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:19-cv-00082-FDW-DSC

| | | |
|---|---|---|
| SPORTS MED PROPERTIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| AQIB TALIB, | ) | |
| | ) | |
| Defendant. | ) | |

THIS MATTER is before the Court on Plaintiff's Motion to Dismiss Defendant's Amended Counterclaim for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and for judgment on the pleadings under Fed. R. Civ. P. 12(c). (Doc. No. 24). Defendant has responded, (Doc. No. 26), Plaintiff has replied, (Doc. No. 27), and this Motion is now ripe for review. For the reasons stated below, Plaintiff's Motion (Doc. No. 24) is GRANTED.

## I. BACKGROUND

**A. Factual Background**

This case arises out of disputes related to the construction of a sports-training facility. Plaintiff Sports Med Properties, LLC ("Sports Med") and Defendant Aqib Talib ("Talib") entered into a Project Management Agreement ("Agreement") on or about March 22, 2016. (Doc. No. 1–2, p. 3). Under the Agreement, Sports Med agreed to provide project management services for the construction of Talib's athletic training complex and Talib agreed to pay for those services. Id. The Services included, but were not limited to, working with Talib's representative to supervise contracts with design and construction professionals; working with Talib's representative on

1

preparation of the initial project budget; coordinating between Talib's representative and architectural and engineering professionals to obtain approval of plans and permits from local authorities; maintaining the budget and schedule; overseeing and managing the accounting process related to the project budget and schedule; monitoring applications for payment from construction and design professionals; and overseeing and managing the accounting process related to the project budget ("Services"). Id. In exchange for those services, Talib agreed to pay a project management fee equal to five percent of the total cost of the project and an accounting service fee of $500.00 per month. Id. at 3–4.

As of March 12, 2018, the Project Completion Date according to a Letter of Substantial Completion issued by the project architect, Talib had paid three installments pursuant to the Agreement. Id. at 4. Sports Med alleges a fourth and final installment is due to fulfill Talib's obligations under the Agreement and is seeking to recover that amount. Id. at 4–5. Sports Med alleges that it is entitled to $94,985.64 in unpaid fees, plus interest at a rate of eighteen percent (18%) per year. Id. at 5. Talib does not dispute that the parties entered into the Agreement. (Doc. No. 20, p. 7). Rather, Talib disputes the scope of the services required of the Sports Med by the Agreement. See generally (Doc. No. 20).

**B. Procedural Background**

Plaintiff ("Sports Med") filed the instant action on January 7, 2019. (Doc. No. 1, p. 2). In its Complaint, Sports Med asserts a breach of contract claim based on the Agreement. (Doc. No. 1–2). Talib filed a Counterclaim on March 14, 2019. (Doc. No. 10). Talib also asserts an affirmative defense based on his Counterclaim for breach of contract. (Doc. No. 10, p. 3). In his Counterclaim Talib alleges that Sports Med failed in its duties required by the Agreement leading to defective and unusable features of the athletic training facility. Id. at 4. On April 23, 2019,

Sports Med filed a motion to dismiss Talib's Counterclaim under Rule 12(b)(6) for failure to state a claim and a motion under Rule 12(c) for judgment on the pleadings. (Doc. No. 24). Talib filed an Amended Counterclaim, reasserting the breach of contract claim and, in the alternative, asserting that the Agreement is unenforceable due to allegedly contradictory clauses causing the Agreement to fail its essential purpose or, alternatively, be rendered illusory, unconscionable and/or void for lack of consideration. (Doc. No. 20, pp. 6–9). Sports Med subsequently withdrew its initial motion under Rules 12(b)(6) and 12(c) and refiled in response to the Amended Counterclaim. (Doc. No. 24).

## II. STANDARD OF REVIEW

### A. 12(b)(6) Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

While all factual allegations contained in a complaint must be accepted as true, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." Id.; see also Erickson v. Pardus, 551 U.S. 89, 93–94 (2007). The Court may ignore a party's legal conclusions set forth in its pleading. McCrann v. Pinehurst, LLC, 737 S.E.2d 771, 777 (N.C. Ct. App. 2013). "Legal inferences drawn from the facts, unwarranted inferences, unreasonable conclusions, or arguments are not part of the [court's] consideration." Dolgaleva v. Va. Beach City Pub. Sch., 364 Fed.Appx. 820, 827 (4th Cir. 2010); see also E. Shore Mkts., Inc. v. J.D. Assocs. LLP, 213 F.3d 175, 180 (4th Cir. 2000). In assessing the legal sufficiency of a claim under Fed. R. Civ. P. 12(b)(6), a court may rely on a document "integral to and explicitly relied on in the complaint" so long as the non-moving party does not challenge the document's authenticity. Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999); see also Goines v. Valley Community Services Bd., 822 F.3d 159, 165 (4th Cir. 2016). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), Fed. R. Civ. P., the exhibit prevails." Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991) (citing 2A Moore's Federal Practice, ¶ 10.06, p. 10–24).

**B. 12(c) Standard of Review**

A Rule 12(c) motion is reviewed under a standard similar to that which is used in Rule 12(b)(6) motions to dismiss, with the "key difference being that on a 12(c) motion, the Court is to consider the answer as well as the complaint." Id. (internal citations omitted). In resolving a motion for judgment on the pleadings, a court must accept the nonmovant's allegations as true and view the facts in the light most favorable to the nonmoving party. Bradley v. Ramsey, 329 F.Supp.2d 617, 622 (W.D.N.C. 2004) (internal citations omitted). The Court, however, need not "accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarranto v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal citations omitted). The court can decide the case on its merits by considering the

pleadings along with any materials referenced in, incorporated by reference, or attached to the pleadings. Fed. R. Civ. P. 10(c).

## III. ANALYSIS

### A. Sports Med's 12(b)(6) Motion to Dismiss Talib's First Claim for Relief (Breach of Contract)

Talib asserts Sports Med breached the terms of the Agreement by "[f]ailing to oversee and manage the design and construction of the Complex." (Doc. No. 20, p. 7).

The Court finds Talib has not alleged facts constituting the breach. "Under North Carolina law, a claim for breach of contract requires a plaintiff to allege 'the existence of a contract between plaintiff and defendant, the specific provisions breached, [t]he facts constituting the breach, and the amount of damages resulting to plaintiff from such breach.'" Dillon v. Leazer Grp., Inc., 374 F.Supp. 3d 547, 555 (E.D.N.C. 2019) (quoting Cantrell v. Woodhill Enterprises, Inc., 160 S.E.2d 476, 481 (N.C. 1968)). Here, the Agreement requires Sports Med to "use commercially reasonable efforts to perform the Services [explicitly enumerated in the contract] for the design and construction of Owner's Premises." (Doc. No. 1, p. 8). However, apart from merely reciting the specific contract provisions allegedly breached, see (Doc. No. 20, pp. 4–6), Talib does not allege facts permitting an inference that Sports Med failed to comply with these provisions. "Threadbare recitals of the elements of a cause of action" are not enough. In alleging breach of contract, Talib has merely recited provisions from the contract and alleged that Sports Med violated these provisions, without providing any factual basis for these allegations. Claiming a party breached a contract through violation of a contractual provision without alleging facts showing how the contractual provision was violated is akin to merely reciting the elements of a breach of contract claim. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation."

See Iqbal, 556 U.S at 678 (quoting Twombly). Accordingly, the Court finds that Talib fails to state a claim for breach of contract.

To the extent Talib has alleged facts beyond bare recitations of the contractual provisions, Talib has not shown that the facts alleged constitute a breach under the Agreement. Talib contends that Sports Med's failure to use commercially reasonable efforts and/or its gross negligence in the performance of its duties under the Agreement "l[ed] to the design and construction of a Complex that was unusable for its intended purpose until further modifications were made." (Doc. No. 20, p. 6). However, this allegation does not constitute a breach under the Agreement.

> "Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." State v. Philip Morris USA Inc., 363 N.C. 623, 631, 685 S.E.2d 85 (2009) (internal citation and quotation omitted). "It is the general law of contracts that the purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument." Carolina Power & Light Co. v. Bowman, 229 N.C. 682, 693-94, 51 S.E.2d 191 (1949). Terms in a contract are to be "interpreted according to their usual, ordinary, and commonly accepted meaning." Anderson v. Allstate Ins. Co., 266 N.C. 309, 312, 145 S.E.2d 845 (1966). "Where the terms of the contract are not ambiguous, the express language of the contract controls in determining its meaning and not what either party thought the agreement to be." Crockett v. First Fed. Sav. & Loan Ass'n, 289 N.C. 620, 631, 224 S.E.2d 580 (1976).

Dillon, 374 F. Supp. 3d at 555.

Here, the undersigned finds the language of the contract clear and unambiguous. The "Services" provision of the Agreement provides that Sports Med's obligations are limited to the "specific services" described in Exhibit A of the contract, and the Agreement further clarifies in the same clause that the Services are "limited to overseeing and managing the design and construction efforts of contractors and vendors engaged by the Owner to perform work on the project." (Doc. No. 1, p. 8). The language limiting Sports Meds' liability as it relates to the workmanship of vendors and contractors directly follows:

> [Sports Med] will not be liable for design techniques or procedures employed by any third party, including Contractors providing designs or other services in connection with the Project, or construction means, methods, techniques, sequences, or procedures, including, but not limited to, as they apply to the structural integrity of constructed components of the Project.

Id. Talib has not sufficiently alleged any facts or omissions as they relate to the Services contracted for, such as soliciting, negotiating, or supervising proposals and contracts, and instead has alleged facts related to the design and installation of the complex's features. See (Doc. No. 20, p. 5). While Talib has alleged facts supporting defects in the Contractors' design and services in connection with the project, see (Doc. No. 20, pp. 5–6), the Agreement does not impose liability on Sports Med for said defects. See Wrightsville Health Holdings, LLC v. Buckner, No. COA16-726, 2017 WL 676952, at *3 (N.C. Ct. App. Feb. 21, 2017) (Where the contract is attached and incorporated into the complaint, the court is not bound by parties' interpretation of the contract and can instead review the document itself.). It is clear that Sports Med's obligations under the agreement are managerial in nature and limited to the Services in Exhibit A.

In sum, Talib fails to state a claim for breach of contract. Talib's claims are conclusory, inconsistent with the plain language of the contract incorporated into the Complaint and Counterclaim and fail to identify the essential element of the cause of action—a breach. Therefore, the Court GRANTS Sports Med's 12(b)(6) motion, and Talib's breach of contract counterclaim is dismissed with prejudice.

**B. Sports Med's 12(c) Motion for Judgment on the Pleadings on Talib's Second Claim for Relief (Declaratory Judgment)**

In the alternative Talib seeks a declaratory judgment on two bases: (1) the clause limiting Sports Med's liability within the Agreement is irreconcilable with the rest of the Agreement such that either the limiting language is unenforceable, or such that the entire contract is unenforceable,

and (2) the contract is void and/or unenforceable because it is illusory, unconscionable, or lacks consideration. (Doc. No. 20 p. 8). The Court will address each argument in turn.

Talib first contends that the Agreement is unenforceable because the liability language is irreconcilable with the services paragraph. (Doc. No. 20, p. 8). The law of contracts in North Carolina provides that a clause "which is utterly repugnant to the body of the contract and irreconcilable with it, will be rejected; likewise, a subsequent clause irreconcilable with a former clause and repugnant to the general purpose and intent of the contract will be set aside. McLain v. Wilson, 371 S.E.2d 151, 152 (N.C. Ct. App. 1988) (citation omitted). However, if it is possible to reconcile two clauses in a contract, the construction that makes the contract enforceable will be preferred. See Wellington-Sears & Co. v. Dize Awning & Tent Co., 15 S.E. 13, 15 (N.C. 1929). Here, Talib contends that the contract is unenforceable because the liability language is irreconcilable with the "Services" paragraph. (Doc. No. 20, p. 8). This Court disagrees.

Here, the Court finds that the language limiting Sports Med's liability is enforceable because it can be reconciled with the entire Agreement. "The Services" provision in the Agreement encompasses a host of obligations and services—administrative and managerial in nature—that Sports Med contracted to provide. The disclaimer of liability, however, makes clear that Sports Med was not liable for design techniques or procedures employed by any third party. The Court finds that these two clauses can be reconciled because both clauses can be true at the same time—the Agreement makes clear that while Sports Med was tasked with overseeing and managing the design and construction of the Complex at an administrative and managerial level, it was not tasked with ensuring workmanship of third parties or reviewing the specific design plans of third parties and weighing in with architectural expertise.

Talib attempts to rely on Federal Reserve Bank of Richmond v. Wright, 392 F.Supp. 1126, 1131 (E.D. Va. 1975), in support of his position. In Wright, the court held a contractual provision requiring the architects to supervise the construction of the facility would be "meaningless were the architects not responsible . . . for detecting and correcting material deviations by the contractor from the requirements of the plan and specifications," and thus plaintiffs properly alleged a cause of action against the architects for failing to properly supervise the work of subcontractors. 392 F.Supp. at 1131. The Court finds the case at bar distinguishable. While Sports Med agreed to "coordinate with the architect and civil engineer retained by Owner for their submittal of any necessary site plan, building permit, and any other applications requiring approval from a local municipality" and "interface with local authorities in an effort to obtain such approvals," at no point do the "Services" mention reviewing such plans and weighing in with any type of architectural expertise. (Doc. No. 1–2, p. 14). Unlike in Wright, where the plaintiffs properly alleged a cause of action against architects for failing to properly supervise the work of subcontractors, here Sports Med was acting in a managerial position and did not design the plans or specifications for construction.

Talib next contends that the Agreement lacks consideration on the grounds that Sports Med's promise is illusory. (Doc. No. 20, p. 7). "To render a promise illusory, the promisor must reserve 'an unlimited right to determine the nature or extent of his performance.'" State v. Philip Morris USA Inc., 685 S.E.2d 85, 96 (N.C. 2009) (quoting Wellington-Sears & Co., 15 S.E. at 15). The Court finds that the contract is not illusory, because here Sports Med has made no such reservation. Sports Med is similarly bound by the terms of the Agreement and would have been liable for breach if it had failed to comply with the terms of the Agreement. For the same reason,

9

the contract is not void for failure of consideration, as Sports Med was obligated under the Agreement to perform all the Services listed.

Finally, Talib argues that the Agreement is void because it is unconscionable. (Doc. No. 20, p. 7). Although courts will rarely determine unconscionability "on the bare-bones pleadings," a claim of unconscionability still must be sufficiently pled with facts alleging the unconscionability. See generally Carlson v. General Motors Corp., 883 F.2d 287, 293 (4th Cir. 1989). For a contract to be declared unconscionable, there must be both procedural and substantive unconscionability. See Raper v. Oliver House, LLC, 637 S.E.2d 551, 555 (N.C. Ct. App. 2006). Procedural unconscionability involves "bargaining naughtiness," or the absence of meaningful choice during the formation of the contract. Id. (quoting King v. King, 442 S.E.2d 154, 157 (N.C. Ct. App. 1994)). The Court will only find substantive unconscionability when the "inequality of the bargain is so manifest as to shock the judgment of a person of common sense," or when "the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." Brenner v. Little Red School House, Ltd., 274 S.E.2d 206, 210 (N.C. 1981). Although a contract may be unconscionable when it "presents pronounced substantive unfairness and a minimal degree of procedural unfairness, or vice versa," both elements must be present to some degree. See Tillman v. Commercial Credit Loans, Inc., 655 S.E.2d 362, 370 (N.C. 2008).

Here, Talib has not alleged any facts to support a claim of procedural unconscionability and only legal conclusions to support a claim of substantive unconscionability. See Hyder v. Inova Diagnostics, Inc., 2013 WL 3036488, at *4 (W.D.N.C. June 17, 2013) (holding bargaining inequality alone is not sufficient to establish procedural unconscionability). Accordingly, the

Court GRANTS Sports Med's motion for judgment on the pleadings on Talib's alternative claim for declaratory judgment.

**C. Sports Med's Motion for Judgment on the Pleadings on Sports Med's Original Breach of Contract Claim**

Sports Med seeks judgment on the pleadings holding Talib liable for breach of the Agreement. Under the Court's interpretation of the Agreement, Talib is liable for all outstanding amounts due under the terms of the Agreement. Talib does not deny the existence of the Agreement nor does he deny that under the Agreement, a project management fee equal to five percent of the total cost the project was due to Sports Med in exchange for the Services contracted for. (Doc. No. 10, p. 2). Instead, Talib denies liability by asserting a different interpretation of Sports Med's obligations under the contract, or, alternatively, that the contract is unconscionable, illusory, and/or void for lack of consideration.

For the reasons stated above and finding that the Agreement is enforceable, the Court finds Talib has breached the Agreement by failing to pay the outstanding balance due and is liable to Sports Med for breach of contract damages. Thus, Sports Med's 12(c) motion for judgment on the pleadings on Sports Med's initial breach of contract claim is GRANTED.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Sports Med's Rule 12 Motions (Doc. No. 24) is GRANTED.

IT IS SO ORDERED.

Signed: July 25, 2019

Frank D. Whitney
Chief United States District Judge